```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division


BANK OF AMERICA, N.A. (USA),  )
                              )
     Appellant,               )
                              )
     v.                       )    CIVIL ACTION 1:06cv390(JCC)
                              )
US AIRWAYS, INC. et al.,      )
                              )
     Appellees,               )
                              )
     and                      )
                              )
JUNIPER BANK,                 )
                              )
     Intervenor.              )
==============================)
                              )
In re: US AIRWAYS, INC.       )
et al.                        )    Bk. No. 04-13819-SSM
                              )
     Debtor.                  )
```

## **M E M O R A N D U M   O P I N I O N**

This case is before the Court on an appeal from the United States Bankruptcy Court of the Eastern District of Virginia's Order of January 30, 2006 denying the summary judgment motion of Bank of America, N.A. (USA).  For the reasons stated below, the Court will reverse and remand the Order in part and affirm the Order in part.

### **I. Background**

Plaintiff/Appellant, Bank of America, N.A. (USA) ("Bank of America") and Defendant/Appellee, US Airways, Inc. ("US Airways") entered into a Co-Branded Card Agreement ("Card

Agreement") on May 20, 2003.  The agreement was largely an extension of an earlier agreement in which the parties established and maintained a co-branded credit card program for the benefit of US Airways' Dividend Miles members.  Section 5.2.1 of the Card Agreement generally requires US Airways to grant Bank of America exclusivity in terms of issuing co-branded credit cards during the term of the agreement, which expires on December 3, 2008.  The Card Agreement also contains a merger provision, Section 5.2.2, that would allow US Airways to maintain a co-branded card with an issuer other than Bank of America if the merger involves US Airways and a third party that has a contract with a card issuer other than Bank of America.

On September 12, 2004, US Airways filed a Chapter 11 petition in the Eastern District of Virginia.  Early in the bankruptcy proceedings, US Airways assumed the Card Agreement.  US Airways then began to formulate a plan to reorganize and emerge from bankruptcy, and US Airways claims that this motivated it to explore a potential merger with America West Airlines, Inc. ("America West").  At the time of the proposed merger, America West had a contract with Juniper Bank ("Juniper") to issue co-branded America West/Juniper credit cards.  US Airways' parent company entered into an agreement with Juniper and America West granting Juniper a license to use US Airways' marks to promote a co-branded card, along with an up front payment of $455 million

to US Airways.  This agreement was contingent upon the successful completion of the US Airways/America West merger.  US Airways contends that it is undisputed that Bank of America knew of the ongoing negotiations and that it took no action to stop those negotiations or to voice any formal objection to them.  The merger closed on September 27, 2005, and the Juniper/US Airways card was issued on January 1, 2006.

US Airways filed its proposed Plan of Reorganization (the "Plan") on August 7, 2005.  The agreement with Juniper that included the $455 million cash payment was central to the Plan's viability.  On September 10, 2005, Bank of America filed a "Limited Objection" to the Plan.  US Airways claims that Bank of America cast its Limited Objection as a mere clarification, rather than as a true objection to the Plan.  This claim is partially based on Bank of America's statement that the proposed modification would not adversely affect other parties in interest who have voted on the Plan.  In light of this objection, Bank of America proposed the solution of expressly preserving its rights in connection with the Card Agreement.  On September 16, 2006, this language (the "savings clause") was added to the Confirmation Order with US Airways' consent.  US Airways emerged from bankruptcy on September 27, 2005.

Bank of America brought this action against US Airways for breach of the Card Agreement in the Delaware Court of

Chancery on October 12, 2005. On November 1, 2005, Juniper intervened in the action and filed a counterclaim in intervention. On November 3, 2005, Bank of America filed a motion for partial summary judgment as to US Airways' breach of Section 5.2.1 of the Card Agreement, which addressed the exclusive nature of the agreement. US Airways then removed the action to the United States District Court for the District of Delaware on November 15, 2005, after which time the case was transferred to this Court. This Court subsequently referred the case to the United States Bankruptcy Court of the Eastern District of Virginia, and on January 30, 2006, the bankruptcy court denied Bank of America's motion for partial summary judgment. In brief, the bankruptcy court found that US Airways had breached the "no shop" provision of Section 5.2.1 of the Card Agreement, and only that provision; yet, Bank of America was estopped from obtaining relief due to deliberate concealment of its claim.

The bankruptcy court declared its January 30, 2006 Order final. Bank of America filed a notice of appeal in this Court on April 10, 2006. This appeal is currently before the Court.

## II. Standard of Review

A district court has jurisdiction over an appeal from a bankruptcy court pursuant to 28 U.S.C. § 158(a). *See Educ.*

*Credit Mgmt. Corp. v. Buchanan*, 276 B.R. 744, 749 (N.D. W. Va. 2002).  A bankruptcy court's conclusions of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *See In re Deutchman*, 192 F.3d 457, 459 (4th Cir. 1999).  *See also* Fed. R. Bankr. P. 8013.

### III. Analysis

Bank of America raises two central questions on appeal: 1) whether the bankruptcy court erred in ruling that it was estopped from asserting a claim against US Airways for breach of contract, and 2) whether the bankruptcy court erred in ruling that US Airways breached one but not all provisions of Section 5.2.1 of the Card Agreement.  Bank of America's argument on the estoppel issue focuses largely on the "irreconcilable findings" of the bankruptcy court.  These findings are that US Airways breached the Card Agreement, Bank of America preserved its claim against the defenses of waiver and administrative bar, yet Bank of America is also precluded from enforcing its rights.  (Appellant's Brief 11.)  In finding that Bank of America openly preserved its rights, the bankruptcy court looked to Bank of America's objection to the Plan.  Additionally, the savings clause added to the confirmation order clearly seeks to preserve Bank of America's claims.  However, the bankruptcy court went on to determine that the conduct of Bank of America "lulled the debtor, the creditors and frankly the Court into proceeding with

confirmation by artfully concealing that it was preparing to lob a nearly half-billion dollar fiscal bombshell at the debtor." (Appellant's Brief Ex. 3, 14.)  Thus, the bankruptcy court concluded that Bank of America was estopped from enforcing its rights.

Bank of America argues that the estoppel determination is not only conceptually irreconcilable with the balance of the bankruptcy court's opinion, but also erroneous, especially in light of the heavy burden of estoppel and the fact that mere silence without full knowledge of the facts and an intention to mislead is insufficient to establish estoppel.  Bank of America properly recites the elements of equitable estoppel as: 1) a representation; 2) reliance; 3) change of position; and 4) detriment.  *See Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust*, 243 Va. 53 (1992).  It also highlights that estoppel is a doctrine to be used rarely and only upon proof of each element by "clear, precise, and unequivocal evidence."  *Id.*  Bank of America claims that US Airways is simply pointing to its "alleged silence about its supposed intent to sue US Airways for breach of the [Card] Agreement," without any other support of admissible evidence of misconduct.  (Appellant's Brief 14.)  Bank of America insists that it was clear and explicit in its intent to preserve its rights under the Card Agreement, yet also reminds that silence is not enough to support a finding of

equitable estoppel.  For silence to result in equitable estoppel, "it must appear that the person to be estopped has full knowledge of all the facts and of his rights, and intended to mislead." *Cantrell v. Booher*, 201 Va. 649, 654 (1960).  Bank of America asserts there is no evidence of bad faith on its behalf, and given its repeated, explicit rejection of any waiver of rights, this silence standard is wholly inapplicable to this case.

US Airways responds by both relying on the logic of the bankruptcy opinion and supporting its conclusion through evaluation of the evidence.  US Airways is quick to stress the affirmative, intentional nature of Bank of America's misconduct by noting "a document submitted by Bank of America in support of the Bank's successful proposal to add a 'savings' clause to the Plan - a document styled a 'limited Objection' to the Plan - affirmatively misrepresented the nature of the claims Bank of America purportedly sought to preserve."  (Appellee's Brief 1.)  Specifically, US Airways states that Bank of America assured all parties that the objection was technical and sought only to clarify aspects of the Plan.  Juniper adds that Bank of America represented to the bankruptcy court and all parties that "[i]t is simply inconceivable that the [proposed change] is central to the Debtor's reorganization, let alone that the Plan 'hinges' upon such releases."  (Juniper's Brief 24.)  The bankruptcy court in

its opinion makes clear that it too was under the same impression.

US Airways explains that finding that Bank of America both preserved its claims and is barred from asserting them is not irreconcilable because this is exactly the type of circumstance to which equitable remedies apply.  Bank of America undisputedly knew all of the relevant facts including the negotiations of Juniper in the summer of 2005.  Furthermore, it clearly intended for its statements about its technical and narrow objections to the Plan to be relied upon.

This question of whether Bank of America misled US Airways, Juniper, and the bankruptcy court into believing that it would not sue on any alleged violations of the Card Agreement is one of great significance.  The Court is well aware of the financial consequences of this decision and the resulting effects such a decision would have on all three of the parties involved.  The Court is disinclined to blindly affirm the bankruptcy court's decision and adopt the belief as fact that US Airways was in fact misled.  Likewise, the Court is similarly unpersuaded that Bank of America engaged in any actions with bad faith or intent to deceive.  The Court is particularly cautious in light of the fact that the parties have not conducting any discovery.  Accordingly, the Court will reverse the bankruptcy court's decision and remand the case for a hearing following discovery.

Bank of America's second ground for appeal addresses the bankruptcy court's finding that US Airways committed only a partial breach of the Card Agreement.  The bankruptcy court found that US Airways violated the "no shop" provision of Section 5.2.1 when it negotiated its agreement with Juniper to issue a co-branded credit card.  Bank of America argues that US Airways breached the rest of Section 5.2.1 as well when it licensed or permitted Juniper to issue and market a US Airways card and when it issued and marketed such a card.  While the bankruptcy court excused this behavior pursuant to the merger exception to the exclusivity clause, Section 5.2.2, Bank of America proposes that the plain language of the Card Agreement disallowed US Airways' actions.  Bank of America reads the merger provision, which addresses situations in which there is "a Merger involving US Airways . . . with a third party that has a contract with a Card issuer other than [Bank of America] to issue a Competing Card," as applying only when US Airways merges with an airline that has an active frequent flyer program with an issuer other than Bank of America.  The Juniper/US Airways card was not issued until January 1, 2006.

US Airways, unsurprisingly, argues just the opposite. It interprets the provision as applying when US Airways merges with an entity that has a contract with a bank other than Bank of America, and contends that it is irrelevant that the other co-

branded credit card had not yet been issued pursuant to that contract.  It claims that since America West had a pre-existing contract to issue a competing card with an issuer other than Bank of America, the plain language of the merger provision allowed US Airways to permit Juniper to issue US Airways co-branded credit cards.

The Court agrees with US Airways, especially in light of the clear precedent that "[w]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Berry v. Klinger*, 225 Va. 201, 208 (1983).  Bank of America's explanations for why Section 5.2.2 does not apply to this situation would require this Court to accept strained logic and ignore the plain language of the Card Agreement.  The Court will not insert additional language regarding an active frequent flyer program in the Card Agreement.  It is not the responsibility of the Court to correct what Bank of America had hoped to bargain for at the time of contract.  Accordingly, this Court will affirm the bankruptcy court's January 30, 2006 Order as to this issue.

### IV. Conclusion

For the reasons stated above, the Court will reverse and remand the January 30, 2006 Order of the bankruptcy court in

part and affirm the Order in part.  An appropriate Order will issue.

July  _19, 2006                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE